# **EXHIBIT A-2**

**Restructuring Agreement**

[Form]

# RESTRUCTURING AGREEMENT

This **RESTRUCTURING AGREEMENT** (this "Agreement"), dated as of [\_\_\_\_\_], 2022, and effective as provided for in Section 12 below, is between **RH Fund XXII LLC**, a Nevada limited liability company ("Lender"), and **Drala Mountain Center (f/k/a Shambhala Mountain Center),** a Colorado non-profit corporation (the "Borrower"). Lender and Borrower are collectively referred to as the "Parties" and individually, a "Party."

R E C I T A L S:

A. On or about July 29, 2015, the Borrower executed and delivered to Wells Fargo Bank, National Association ("Wells Fargo Bank"), that certain Consolidated Promissory Note with an original principal balance of $4,150,000.00 (as from time to time modified, amended, extended and forbeared prior to the date hereof, the "Original Note").

B. The Original Note was secured by that certain Deed of Trust from Shambhala USA (f/k/a Shambhala International (Vajradhatu)) ("Shambhala USA") as Grantor in favor of Wells Fargo Bank as Lender and Public Trustee of Larimer County, CO as the Trustee recorded December 20, 2005, at Reception No. 2005-0108162 of the real property records of Larimer County, Colorado, as amended and modified by the Modifications of Deed Of Trust recording August 6, 2015 at Reception No. 20150052007, August 1, 2017 at Reception No. 20170051157, November 21, 2018 at Reception No. 20180070782, May 29, 2019 at Reception No. 20190028390, and August 8, 2019 at Reception No. 20190045995 and that certain Deed of Trust from Shambhala USA as Grantor in favor of Wells Fargo Bank as Beneficiary and the Public Trustee of Larimer County, CO as the Trustee recorded September 23, 2014, at Reception No. 20140053833 (collectively the "4921 DOT") granting a security interest in the property located in Larimer County, Colorado, at 4921 County Road 68C, Red Feather Lakes, CO 80545 and as more particularly described in the 4921 DOT (the "4921 Collateral Property").

C. The Original Note was further secured by that certain Deed of Trust from Borrower as Grantor in favor of Wells Fargo Bank as Lender and Public Trustee of Larimer County, CO as the Trustee recorded December 27, 2005, at Reception No. 2005-0110080 of the real property records of Larimer County, Colorado, as amended and modified by the Modifications of Deed of Trust recording August 6, 2015 at Reception No. 20150052008, July 31, 2017 at Reception No. 20170050473, November 21, 2018 at Reception No. 201800070784, and May 29, 2019 at Reception No. 20190028389 and August 8, 2019 at Reception No. 20190045992 (collectively the "5230 DOT") granting a security interest in the property located in Larimer County, Colorado, at 5210 aka 5230 W County Road 68C, Red Feather Lakes, CO 80545 and as more particularly described in the 5230 DOT (the "5230 Collateral Property").

D. The Original Note was further secured by that certain Assignment of Rents and Leases given by Borrower in favor of Wells Fargo Bank as Lender recorded December 20, 2005, at Reception No. 2005-0108163 of the real property records of Larimer County, Colorado, December 27, 2005 at Reception No. 2005-0110081, July 11, 2008 at Reception No. 20080044462, July 11, 2008 at Reception No. 20080044460, and September 23, 2014 at Reception No. 20140053831 (collectively the "Assignment of Rents").

E. The Original Note was further secured by that certain Amended and Restated Security Agreement, dated July 11, 2019, executed by Borrower in favor of Wells Fargo Bank, as secured party, which granted Wells Fargo Bank a security interest in the Collateral as defined therein (the "Security Agreement"). The liens granted under the Security Agreement remain perfected by virtue of Wells Fargo Bank filing its initial financing statement with the Colorado Secretary of State on December 20, 2005 as Filing Number 2005F1275587 as continued from time to time with the most recent Continuation Statement filed at Filing Number 20202074237 and as amended by Filing Number 20222028731 (collectively, the "UCC-1").

F. The Original Note, 4921 DOT, 5230 DOT, Assignment of Rents, Security Agreement and UCC-1 and any other document relating thereto prior to the date hereof shall collectively be referred to as the "Original Loan Documents".

G. Pursuant to the terms of the Original Note, the obligations due and owing thereunder matured on November 30, 2019 (the "Original Maturity Date"), and Borrower failed to pay the obligations by the Original Maturity Date which, pursuant to the terms of the Original Loan Documents, comprised an event of default thereunder (the "Existing Default").

H. The Borrower and Wells Fargo Bank entered into four (4) separate Forbearance Agreements under which, *inter alia*, Wells Fargo Bank agreed to forbear from exercising remedies in respect of the Existing Default.

I. On or about May 11, 2021, Wells Fargo Bank assigned the Original Loan Documents to Lender, including an assignment of the 4921 DOT and 5230 DOT pursuant to those certain Assignments of Deeds of Trust dated June 7, 2021.

J. On November 1, 2021, Lender and Borrower entered into that certain Forbearance Agreement which, *inter alia*: (i) required Borrower to pay a $25,000.00 forbearance fee, (ii) waived Borrower's obligation to make monthly payments of principal and interest in the amount of $24,300.00, (iii) authorized Borrower to pay monthly interest payments in the amount of $5,000.00 and (iv) required Borrower to pay all amounts due and owing under the Note no later than February 28, 2022 (the "Lender Forbearance Agreement").

K. On February 18, 2022, Borrower changed its name from Shambhala Mountain Center to Drala Mountain Center.

L. On February 28, 2022 (the "Petition Date"), Borrower filed its voluntary petition for relief under subchapter V of chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq*. (the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of Colorado (the "Bankruptcy Court"), styled as *In re Drala Mountain Center (f/k/a Shambhala Mountain Center)*, Case No. 22-10656-JGR (the "Bankruptcy Case").

M. On the Petition Date, Borrower failed to pay all amounts due and owing under the Original Note as required under the Lender Forbearance Agreement.

N. On March 28, 2022, the Bankruptcy Court entered its *Final Order (I) Authorizing Use of Cash Collateral, (II) Granting Adequate Protection, and (III) Granting Related Relief* (Docket No. 135) (the "Final Cash Collateral Order"). As set forth in the Final Cash Collateral Order, Borrower granted Lender the following adequate protection, pursuant to Sections 361 and 363(e) of the Bankruptcy Code, in exchange for consensually using Lender's cash collateral: (i) monthly interest payments of $5,000.00, and (ii) replacement liens on post-petition assets to the same extent Lender's liens attached to the Borrower's prepetition assets pursuant to the 4921 DOT, 5210 DOT, Assignment of Rents, and Security Agreement. Additionally, Borrower agreed to use cash collateral in compliance with the budget under the Final Cash Collateral Order and to further segregate its cash received from donations from cash received from operations.

O. On May 5, 2022, Lender filed its secured claim in the Bankruptcy Case in the amount of $4,269,921.67 (Claims Reg. No. 3-1) (the "Proof of Claim").

P. During the course of the Bankruptcy Case, the Borrower and Lender have cooperatively shared information in order to reach a consensus on an agreement to restructure and amend the terms of the Original Note.

Q. During the course of the Bankruptcy Case, the Borrower and the Lender have disputed (i) the extent of Lender's liens encumbering the parcels known as "Campfire Council" [NW ¼ of NW ¼ 23-9-73] and "Mildred Mason" [NE ¼ of NW ¼ 23-9-73], which the Borrower and Wells Fargo Bank originally intended to be part of the 4921 Collateral Property and 5230 Collateral Property, and two parcels owned by Shambhala USA [NE 1/4 of SW 1/4 23-9-73 and N 1/2 OF SE 1/4 23-9-73], which the Borrower, Shambhala USA, and Wells Fargo Bank did not originally intend to be part of the 4921 Collateral Property and 5230 Collateral Property, and (ii) whether Lender's liens encumber any donations made to Borrower.

R. On or about May 31, 2022, the Borrower and the Lender reached agreement on terms to modify the Original Loan Documents as set forth in the term sheet attached as **Exhibit A-1** to the Plan referred to below (the "Red Hills Term Sheet").

S. On July 28, 2022, the Borrower filed the *Debtor's Plan of Reorganization* [Docket No. __] (the "Plan"), which was approved by the Bankruptcy Court pursuant to the [*Order Confirming Debtor's Plan of Reorganization*] [Docket No. __] (the "Confirmation Order").

T. Pursuant to the Plan, the Lender's claims arising from the Original Note shall be Allowed (as defined in the Plan) in the amount of (i) all principal and accrued interest at the non-default contractual rate (6.25%) as of the Effective Date (as defined in the Plan, the "Plan Effective Date"), *plus* (ii) reimbursable attorneys' fees and costs incurred through the Plan Effective Date in an amount agreed between the Borrower and the Lender or, if the Borrower and the Lender do not agree, in an amount Allowed by the Bankruptcy Court upon a fee application filed by the Lender on or prior to the Professional Fee Administrative Claims Bar Date (as defined in the Plan), *minus* (iii) the amount of the Effective Date Payment (as defined in the Plan) (the "Red Hills Claim").

U. As of the Plan Effective Date (and after giving effect to the Effective Date Payment), the amount of the Red Hills Claim is $[_____] consisting of the following amounts:

(i) $3,863,071.36 in principal, (ii) $[_____] in accrued interest and fees (other than attorneys' fees), and (iii) $[_____] in reimbursable attorneys' fees and costs incurred through the Effective Date[1] *minus* (iii) the Effective Date Payment of $1,000,000.

   V. The Parties have agreed to enter into this Agreement to effectuate the restructuring of the Red Hills Claim as set forth in the Plan, the Confirmation Order, and the Red Hills Term Sheet.

A G R E E M E N T:

NOW THEREFORE, and in consideration of the recitals set forth above, the agreements, promises, releases and covenants made by the Parties to this Agreement, and other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the Parties mutually agree as follows:

   1. **RECITALS**. Each of the above RECITALS is true and correct and is incorporated in the Agreement and is relied upon by the Borrower and Lender in agreeing to the terms of this Agreement.

   2. **EFFECTIVE DATE PAYMENT**. Upon the Plan Effective Date, the Borrower shall pay Lender the Effective Date Payment of $1,000,000.00, which shall reduce the principal amount of the Red Hills Claim as provided in the Plan.

   3. **AMENDED AND RESTRUCTURED NOTE**. Upon the Plan Effective Date, the Original Note shall be amended, restated and restructured in its entirety as provided for in Exhibit A-3 attached to the Plan (the "Restructured Note") and Borrower shall execute and deliver the Restructured Note to Lender.

   4. **AMENDMENTS TO 4921 DOT AND 5230 DOT**. Upon the Plan Effective Date, the 4921 DOT and 5230 DOT shall be amended as provided for in Exhibit A-4 attached to the Plan (the "DOT Amendments") and Borrower shall execute and submit the DOT Amendments for recording.

   5. **AMENDMENT TO SECURITY AGREEMENT**. Upon the Plan Effective Date, the Security Agreement shall be amended as provided for in Exhibit A-5 attached to the Plan (the "Security Agreement Amendment") and Borrower shall execute and deliver the Security Agreement Amendment to Lender.

   6. **UNCONDITIONAL PAYMENTS**. All payments required to be made under the Restructured Note shall be made without any claim, cause of action, counterclaim, offset, recoupment or other defense to the payment thereof and/or against Lender.

   7. **REAFFIRMATION OF CERTAIN LOAN DOCUMENTS AND LIENS; AGREEMENTS**. Borrower hereby ratifies and confirms the following documents (which,

---

[1] [Final amounts to be inserted as of the Effective Date. The recital assumes that the Borrower and the Lender will have reached agreement on the amount of reimbursable attorneys' fees.]

collectively with this Agreement and the Restructured Note, and any other agreements, documents, and instruments executed and/or delivered on and after the Plan Effective Date in connection therewith shall constitute the "**Loan Documents**"):

   a. Security Agreement, as amended by this Agreement and the Security Agreement Amendment;

   b. 4921 DOT and 5230 DOT, as amended by the DOT Amendments;

   c. Assignment of Rents; and

   d. UCC-1.

To the extent requested by the Lender, and in accordance with the terms of this Agreement, the Borrower shall execute ratification agreements as to any particular Loan Document.

8. **ATTORNEYS' FEES AND COSTS.** If Lender or any other holder of the Restructured Note retains an attorney in connection with any Event of Default or failure to make payment at the Maturity Date (as defined in the Restructured Note) or to collect, enforce or defend the Restructured Note in any lawsuit or in any probate, reorganization, bankruptcy, arbitration or other proceeding, or if Borrower sues Lender or any other holder in connection with the Restructured Note and does not prevail, then Borrower agrees to pay to Lender or such other holder, in addition to the Restructured Principal (as defined in the Restructured Note), interest and any other sums owing to Lender hereunder, all costs and expenses incurred by Lender or such other holder in trying to collect the Restructured Note or in any such suit or proceeding, including, without limitation, reasonable attorneys' fees and expenses, investigation costs and all court costs and all such amounts shall thereafter constitute other indebtedness evidenced by the Restructured Note, whether or not suit is filed hereon, whether before or after the Maturity Date, or whether in connection with bankruptcy, insolvency or appeal, or whether collection is made against Borrower.

9. **BORROWER COVENANTS.**

   a. No later than thirty (30) days past each month end, Borrower will tender to Lender a balance sheet and income statement from the previous month.

   b. Borrower shall not allow any additional liens to be placed on any of the collateral granted to Lender pursuant to the 4921 DOT and 5230 DOT, as amended by the DOT Amendments, without the prior written consent of Lender.

   c. Borrower shall pay all real property taxes when and as due.

   d. Borrower shall provide evidence of property insurance in a combined amount of not less than $4,500,000 on all of the real property subject to the 4921 DOT and 5230 DOT (as amended by the DOT Amendments) with Lender being named as loss payee on such property insurance.

5

10. **Modifications to Loan Documents.** Notwithstanding anything to the contrary in the Loan Documents:

   a. Except during the occurrence and continuance of an Event of Default, the Borrower shall be permitted, in its sole discretion, without restriction, to use, sell, transfer, or otherwise dispose of any of its personal property constituting Collateral and Proceeds (as such terms are defined in the Security Agreement) thereof, and to commingle the Collateral and the Proceeds thereof with other property.

   b. The Collateral shall not include any deposit accounts, cash, or donations (whether in the form of cash, securities, or other property).

   c. Upon any sale, transfer, or other disposition by Borrower of personal property constituting Collateral and Proceeds thereof, Lender's liens on such Collateral and such Proceeds shall be automatically released. Upon the Borrower's reasonable request, Lender agrees to execute and deliver any agreements, documents, or instruments, and to take any action necessary or reasonably desirable to evidence such release.

11. **WAIVER OF EXISTING DEFAULTS UNDER THE NOTE**. On the Plan Effective Date, all existing Defaults and Events of Default under the Original Loan Documents as of the Plan Effective Date shall be deemed waived in accordance with the terms of this Agreement. However, the occurrence of the Plan Effective Date does not relieve the Borrower from performing under the terms of the Loan Documents.

12. **RELEASE**. For and in consideration of the amendment and restatement of the Original Loan Documents by entry into the Amended Red Hills Loan Documents (as defined in the Plan) as described herein and such other good and valuable consideration, the receipt and sufficiency of which is hereby agreed to and acknowledged by Borrower, Borrower hereby releases and forever discharges Lender from any and all claims, demands, costs, and obligations of any kind or nature whatsoever, both known and unknown, which have occurred or resulted in the past, which exist at the present, or any claims of any kind that could have been asserted against Lender prior to the Plan Effective Date.

13. **REPRESENTATION AND WARRANTIES OF THE BORROWER**. In order to induce Lender to enter into this Agreement, Borrower represents and warrants, on and as of the Plan Effective Date, that each of the following representations and warranties are true and accurate and will remain true and accurate until payment and performance in full of all liabilities, obligations, and debt evidenced by the Amended Red Hills Loan Documents:

   (a) Except as expressly disclosed in Borrower's Schedules of Assets and Liabilities and Statement of Financial Affairs, filed in the Bankruptcy Case at Docket Nos. 93 and 162, the representations and warranties of Borrower contained in the Security Agreement (as amended by this Agreement and the Security Agreement Amendment), 4921 DOT and 5230 DOT (as amended by the DOT Amendments), and Assignment of Rents are true and correct in all material respects on and as of the Plan Effective Date to the same extent as though made on and

6

as of the Plan Effective Date.

(b) The execution, delivery and performance by Borrower of this Agreement (i) are within Borrower's corporate powers, as applicable; (ii) have been duly authorized by all necessary action; (iii) do not require any consent or approval that has not been obtained; and (iv) do not and shall not result in any breach of, or constitute a default or event of default under any agreement to which the Borrower or the Collateral is bound.

(c) This Agreement constitutes the legal, valid and binding obligation of Borrower enforceable against the Borrower in accordance with the terms set forth herein.

(d) The monthly operating reports and variance reports that have been delivered to Lender by Borrower during the Bankruptcy Case are true and correct in all material respects.

14. **CONDITIONS PRECEDENT; EFFECTIVENESS**. The effectiveness of this Agreement is conditioned upon satisfaction (in Lender's sole discretion) of the following conditions precedent:

(a) each Party shall have received counterparts of this Agreement duly executed by the other Party;

(b) the occurrence of the Plan Effective Date;

(c) Borrower shall make the Effective Date Payment as required hereunder upon the Plan Effective Date;

(d) Borrower shall execute and deliver the Restructured Note to Lender;

(e) Borrower shall execute and deliver the DOT Amendments to Lender and submit the DOT Amendments for recording;

(f) Borrower shall execute and deliver the Security Agreement Amendment to Lender; and

(g) the representations and warranties of Borrower set forth herein shall be true and correct in all material respects as of the Plan Effective Date.

15. **ACKNOWLEDGEMENT; RELEASE, STAY AND WAIVER.**

(a) Borrower agrees with Lender that, on and as of the Plan Effective Date, (i) that Lender has not defaulted in the observance or performance of any of Lender's obligations under the Original Loan Documents, the Original Note, or the Amended Red Hills Loan Documents; and (ii) that Lender is not liable to Borrower in any way for any matter whatsoever, whether or not relating to the Original Loan Documents, and that the Borrower does not have any claims or causes of action against Lender of any nature whatsoever whether or not relating to the Original Loan Documents.

(b) BORROWER HEREBY ACKNOWLEDGES THAT IT HAS NO DEFENSE, COUNTERCLAIM, OFFSET, CROSS-COMPLAINT, CLAIM OR DEMAND OF ANY KIND OR NATURE WHATSOEVER THAT CAN BE ASSERTED TO REDUCE OR ELIMINATE ALL OR ANY PART OF SUCH BORROWER'S LIABILITY TO REPAY THE RESTRUCTURED NOTE OR THE OTHER OBLIGATIONS OF THE BORROWER UNDER THE LOAN DOCUMENTS OR TO SEEK AFFIRMATIVE RELIEF OR DAMAGES OF ANY KIND OR NATURE FROM LENDER. BORROWER, ON BEHALF OF BORROWER AND ON BEHALF OF BORROWER'S AGENTS, EMPLOYEES, REPRESENTATIVES, SUCCESSORS AND ASSIGNS, HEREBY VOLUNTARILY AND KNOWINGLY AND UNCONDITIONALLY RELEASES AND FOREVER DISCHARGES LENDER, LENDER'S AGENTS, DIRECTORS, OFFICERS, FIDUCIARIES, EMPLOYEES, AFFILIATES, CONSULTANTS, FINANCIAL ADVISORS, SUCCESSORS AND ASSIGNS, FROM ALL POSSIBLE CLAIMS, DEMANDS, ACTIONS, CAUSES OF ACTION, DAMAGES, COSTS, EXPENSES, AND LIABILITIES WHATSOEVER, KNOWN OR UNKNOWN, ANTICIPATED OR UNANTICIPATED, SUSPECTED OR UNSUSPECTED, FIXED, CONTINGENT, OR CONDITIONAL, AT LAW OR IN EQUITY, ARISING BY VIRTUE OF ACTIONS TAKEN, ACTIONS OMITTED TO BE TAKEN OR THE OCCURRENCE OF ANY EVENT ON OR BEFORE THE PLAN EFFECTIVE DATE, WHICH MAY NOW OR HEREAFTER HAVE AGAINST LENDER, ITS AGENTS, DIRECTORS, OFFICERS, FIDUCIARIES, EMPLOYEES, AFFILIATES, SUCCESSORS AND ASSIGNS, IF ANY, AND IRRESPECTIVE OF WHETHER ANY SUCH CLAIMS ARISE OUT OF CONTRACT, TORT, VIOLATION OF LAW OR REGULATIONS, OR OTHERWISE, AND ARISE FROM THE ORIGINAL NOTE, THE EXERCISE OF ANY RIGHTS AND REMEDIES UNDER THE ORIGINAL LOAN DOCUMENTS, OR THE NEGOTIATION AND EXECUTION OF THIS AGREEMENT.

(c) Borrower acknowledges that Lender holds an indefeasible, valid, perfected, non-avoidable first-priority lien upon, and security interest in the 4921 Collateral Property and 5230 Collateral Property (as described in the 4921 DOT, 5230 DOT, and DOT Amendments) and the Collateral as defined in the Security Agreement, subject only to encumbrances which are permitted under the Loan Documents to have priority over the lien of the Lender.

16. **DISPOSITION OF COLLATERAL**. Borrower also hereby acknowledges and agrees that the following shall constitute a commercially reasonable manner for the disposition of any collateral securing the obligations under the Restructured Note subject to Article 8 and Article 9 of the Uniform Commercial Code: Any public or private sale or any means of disposition set forth in the Loan Documents.

17. **LIABILITY AND INDEMNIFICATION OF LENDER**. Except as occasioned by Lender's breach of this Agreement, Lender shall not be liable for any claims, suits, actions, costs, damages, liabilities, attorneys' fees or expenses, or incidental, consequential, special or punitive damages ("Liabilities") in connection with the subject matter of this Agreement or the Restructured Note. Borrower hereby agrees to indemnify and hold harmless Lender and its affiliates and the directors, officers, employees and agents of any of them, and the successors and assigns of Lender from and against any and all Liabilities arising from or in connection with any acts or omissions of Lender in connection with this Agreement or the Loan Documents or the

performance of Lender's duties under this Agreement or the Loan Documents, except to the extent that such Liabilities arise from Lender's gross negligence, bad faith, or willful misconduct.

18. **FURTHER ASSURANCES**. Upon the reasonable request of Lender from time to time, Borrower shall execute and deliver, or cause to be executed and delivered, to or at the direction of Lender, all documents and do, or cause to be done, all such other acts and things to assure that the benefits of this Agreement are realized by Lender.

19. **TIME OF THE ESSENCE**. Time shall be of the essence with respect to the performance of the obligations of Borrower under this Agreement.

20. **NO ADDITIONAL BENEFICIARIES**. This Agreement is made and entered into for the sole protection of Borrower and Lender and no other person or entity shall have any right of action hereon, right to claim any right or benefit from the terms contained herein or be deemed a beneficiary hereunder.

21. **MISCELLANEOUS**.

    (a) Entire Agreement. The Restructured Note, the Loan Documents, and this Agreement contain the complete understanding and agreement of the Borrower and Lender and supersede all prior representations, warranties, agreements, arrangements, understandings, and negotiations, including those set forth in the Original Loan Documents.

    (b) Notices. All notices or demands by any party relating to this Agreement or any other Loan Document shall be in writing and shall be personally delivered or sent by certified mail, postage prepaid, return receipt requested, by prepaid nationally recognized overnight courier, or by electronic mail to Borrower or to Lender, as the case may be, at their respective addresses set forth below:

    If to Borrower:   DRALA MOUNTAIN CENTER
                      4921 County Road 68-C
                      Red Feather Lakes, CO  80545
                      Attention:   Kevin Suh, CFO
                      E-mail:      ksuh@dralamountain.org

                      With a copy to (which shall not constitute notice):

                      Ropes & Gray LLP
                      Prudential Tower
                      800 Boylston Street
                      Boston, MA  02199-3600
                      Attention:   Patricia Chen
                      E-mail:      patricia.chen@ropesgray.com

9

If to Lender:  RH FUND XXII LLC
8375 SW Beaverton Hillsdale Hwy, Suite 200
Portland, OR 97225
Attention: Bobby Barnett
E-mail: bbarnett@RedHillsHoldings.com

With a copy to (which shall not constitute notice):

Moye White LLP
1400 16th Street, 6th Floor
Denver, CO 80202-1486
Attention: Tim Swanson
E-mail: Tim.Swanson@moyewhite.com

The date of giving of any such notice, consent, waiver or other communication shall be (i) the date of delivery if hand delivered, (ii) the date of transmission if sent by electronic mail (provided that any communication received by electronic mail after 5:00 P.M. (prevailing Mountain Time) shall be deemed to be given the next Business Day), (iii) the date of receipt for certified or registered mail, and (iv) the day after delivery to the overnight courier service if sent thereby. The Parties may change the address at which they are to receive notices hereunder, by notice in writing in the foregoing manner given to the other.

(c) <u>Construction</u>. This Agreement shall be construed without regard to any presumption or rule requiring construction against the party drafting or causing any instrument to be drafted.

(d) <u>No Waivers</u>. Unless expressly provided for herein, nothing contained in this Agreement shall constitute a waiver of any rights or remedies of Lender under the Loan Documents, in equity or at law. No delay or failure on the part of any Party in the exercise of any right or remedy under this Agreement shall operate as a waiver, and no single or partial exercise of any right or remedy shall preclude other or further exercise thereof or the exercise of any other right or remedy. No action or omission by any Party contrary to the provisions of this Agreement shall be construed to constitute a waiver of any of the express provisions.

(e) <u>Amendment or Waiver</u>. No provision of the Restructured Note, the Loan Documents or this Agreement may be amended, discharged, supplemented, terminated, or waived except in a writing signed by the Party against whom it is being enforced.

(f) <u>Governing Law and Venue</u>. This Agreement shall be governed by and construed in accordance with the laws of the State of Colorado (without giving effect to its laws of conflicts). Borrower agrees that any legal action or proceeding with respect to any of its obligations under this Agreement, Restructured Note or the Loan Documents may be brought by Lender in any state or federal court located in the State of Colorado, as Lender in its sole discretion may elect. By the execution and delivery of this Agreement, Borrower submits to and accept, generally and unconditionally, the non-exclusive jurisdiction of those courts. Borrower waives any claim that the State of Colorado is not a convenient forum or the proper venue for any such

suit, action or proceeding.

(g) <u>Successors and Assigns</u>. This Agreement shall be binding upon and inure to the benefit of the respective heirs, successors, permitted assigns, and legal representatives of the Parties. Borrower may not assign this Agreement or any Loan Document without the prior written consent of Lender.

(h) <u>Jury Trial, Waiver</u>. To the fullest extent allowable under applicable law, Borrower and Lender waive any right to have a jury participate in resolving any dispute, whether sounding in contract, tort, or otherwise, between (i) Borrower and (ii) Lender arising out of, connected with, related to or incidental to the relationship established between them in connection with this Agreement, or any Loan Document or any other instrument, document or agreement executed or delivered in connection therewith or the transactions related thereto. Borrower hereby agrees and consents that any such claim, demand, action or cause of action shall be decided by court trial without a jury and that any Party may file an original counterpart or a copy of this Agreement with any court as written evidence of the consent of the parties hereto to the waiver of their right to trial by jury.

(i) <u>Controlling Terms</u>. If there is a conflict between any provision contained in this Agreement and one or more provisions contained in the Restructured Note or any other Loan Document, the provision contained herein shall prevail.

(j) <u>Paragraph or Section Titles</u>. The Paragraph or Section titles contained in this Agreement are included for the sake of convenience only, shall be without substantive meaning or content of any kind whatsoever, and are not a part of the agreement among the parties.

(k) <u>Severability of Terms</u>. In the event any one or more of the provisions contained in this Agreement shall, for any reason, be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provision of this Agreement.

(l) <u>Counterparts.</u> This Agreement may be executed in multiple counterparts, each of which, when so executed, shall be deemed an original, but all such counterparts, taken together, shall constitute one and the same agreement.

(m) <u>Facsimile Signatures</u>. Any facsimile or electronic transmittal of original signature versions of this Agreement shall be considered to have the same legal effect as execution and delivery of the original document and shall be treated in all manner and respects as the original document. The parties also agree to promptly exchange counterparts with original signatures.

(n) <u>Consultation with Counsel</u>. BORROWER REPRESENTS TO LENDER THAT IT IS REPRESENTED BY LEGAL COUNSEL OF ITS OWN CHOOSING; BORROWER HAS DISCUSSED THIS AGREEMENT WITH ITS COUNSEL; THAT BORROWER IS FULLY AWARE OF THE TERMS AND CONDITIONS CONTAINED HEREIN AND OF THEIR EFFECT; AND THAT BORROWER HAS VOLUNTARILY

ENTERED INTO THIS AGREEMENT.

**Signatures on following pages**

*[COUNTERPART SIGNATURE PAGE FOR RESTRUCTURING AGREEMENT]*

**IN WITNESS WHEREOF**, the Parties have signed and delivered this instrument under seal (where applicable) or have caused this instrument to be signed and delivered by its duly authorized representative under seal (where applicable) as of the date first set forth above. Where applicable law so provides, the Parties intend that this instrument shall be deemed to be signed and delivered as a sealed instrument.

**<u>LENDER</u>:**

**RH Fund XXII LLC, a Nevada Limited Liability Company**

By: _____

Name: _____

Its: _____

*[COUNTERPART SIGNATURE PAGE FOR RESTRUCTURING AGREEMENT]*

**IN WITNESS WHEREOF**, the Parties have signed and delivered this instrument under seal (where applicable) or have caused this instrument to be signed and delivered by its duly authorized representative under seal (where applicable) as of the date first set forth above. Where applicable law so provides, the Parties intend that this instrument shall be deemed to be signed and delivered as a sealed instrument.

**BORROWER:**

Drala Mountain Center (f/k/a Shambhala Mountain Center), a Colorado non-profit corporation

By: _____

Name: _____

Its: _____