## **EXHIBIT A-3**

**Restructured Red Hills Note**

[Form]

## AMENDED AND RESTATED PROMISSORY NOTE

$[Restructured Principal][1]                                                                 Denver, CO

[  ], 2022[2]

FOR VALUE RECEIVED, DRALA MOUNTAIN CENTER (f/k/a SHAMBHALA MOUNTAIN CENTER), a Colorado nonprofit corporation, having its principal place of business at 4921 County Road 68-C, Red Feather Lakes, Colorado 80545 ("Borrower"), hereby unconditionally promises to pay to the order of RH Fund XXII, LLC, a Nevada limited liability company, having its principal place of business at 3753 Howard Hughes Parkway, Suite 200 Las Vegas, NV 89169 ("Lender"), or such other place as the holder hereof may from time to time designate in writing, the principal sum of [insert Restructured Principal] (the "Restructured Principal"), in lawful money of the United States of America, with interest thereon to be computed from the date of this Promissory Note (this "Restructured Note") in accordance with the rates and terms set forth in that certain Restructuring Agreement (the "Restructuring Agreement") that was approved by the *Debtor's Plan of Reorganization* [Docket No. __] (the "Plan") and the [*Order Confirming Debtor's Plan of Reorganization*] entered on _____, 2022 [Docket No. __] (the "Confirmation Order"), by the United States Bankruptcy Court for the District of Colorado (the "Bankruptcy Court") in Borrower's bankruptcy case filed under subchapter V of chapter 11 styled as *In re Drala Mountain Center (f/k/a Shambhala Mountain Center)*, Case No. 22-10656-JGR (the "Bankruptcy Case").  As a result of the Bankruptcy Court entering the Confirmation Order and approving the terms of the Restructuring Agreement in the Bankruptcy Case, this Restructured Note is a legally binding obligation of Borrower and amends and restates in its entirety that certain Consolidated Promissory Note, dated as of July 29, 2015, between Borrower and Lender (as assignee of Wells Fargo Bank, National Association).  All capitalized terms not expressly defined herein shall have the meanings ascribed to them in the Restructuring Agreement.

1.  Interest Rate.  Interest shall accrue against the Restructured Principal at a fixed rate of 6.25% per annum ("Regular Interest").  Regular Interest shall be computed on the basis of a year consisting of 360 days and paid for the actual number of days in each month.  Upon the occurrence and during the continuance of an uncured Event of Default, Lender shall be entitled, by written demand to Borrower, to charge default interest of 4% per annum in addition to all Regular Interest, *i.e.*, the default rate of interest shall be 10.25% per annum, on amounts that are due and unpaid.

2.  Interest Payments.  From the date of this Restructured Note (the "Note Effective Date") through and including June 30, 2023 (the "Interest Only Period"), the Borrower shall pay to Lender $5,000.00 on the first business day of each month in arrears (each a "Partial Interest Payment") and such payment shall be applied to Borrower's Regular Interest payment due and owing under the Restructured Note with the unpaid portion of Borrower's Regular Interest payment being capitalized and added to the Restructured Principal on such interest payment date during the Interest Only Period.  Beginning on August 1, 2023, the Borrower shall pay to Lender full interest payments on the first business day of each month in arrears (each a "Full Interest Payment") through the Maturity Date (as defined below).  If any payment to be made by Borrower hereunder shall become due on a day other than a business day, such payment shall

---

[1] [Amount to equal (i) all principal and accrued interest at the non-default contractual rate (6.25%) as of the Effective Date of the Plan, *plus* (ii) reimbursable attorneys' fees and costs incurred through the Effective Date of the Plan in an amount agreed between the Borrower and the Lender or, if the Borrower and the Lender do not agree, in an amount Allowed by the Bankruptcy Court upon a fee application filed by the Lender on or prior to the Professional Fee Administrative Claims Bar Date (as defined in the Plan), *minus* (iii) the amount of the Effective Date Payment of $1,000,000.]

[2] [To be dated the Effective Date of the Plan.]

be made on the next succeeding business day and such extension of time shall be included in computing any interest in respect of such payment.

   3. <u>Principal Payments</u>. Commencing upon October 1, 2024,[3] Borrower shall pay to Lender $25,000.00 on the first business day of each calendar quarter with all such payments being applied to the Restructured Principal (each a "<u>Principal Payment</u>"). The balance of the Restructured Principal shall be due on the Maturity Date.

   4. <u>Prepayments</u>. Prepayments of the Restructured Principal may be paid at any time without premium or penalty. For every prepayment made prior to the second (2nd) anniversary of the Note Effective Date, Lender shall waive an amount equal to twenty percent (20%) of the Restructured Principal so prepaid, up to a total waived amount of $100,000.00 (the "<u>Lender Donation</u>"). In accordance with applicable law related to charitable donations, Borrower will provide Lender with an acknowledgement of the amount(s) of any Lender Donation received in the calendar years of 2022, 2023 and 2024, within forty five (45) days following the end of each such calendar year.

   5. <u>Maturity Date</u>. All indebtedness due under the Restructured Note shall be due and owing to the Lender on [_____], 2028[4] (as may be extended pursuant to this paragraph 5, the "<u>Maturity Date</u>"). The initial Maturity Date shall automatically, without further action by Borrower or Lender, be extended to [_____], 2029,[5] if the Borrower has made voluntary prepayments totaling not less than $250,000.00 prior to ninety (90) days before the initial Maturity Date (the "<u>First Extension Date Payment</u>"). The first extended Maturity Date shall automatically, without further action by Borrower or Lender, be further extended to [_____], 2020,[6] if the Borrower has made voluntary prepayments totaling not less than $500,000.00 (inclusive of the First Extension Date Payment) prior to ninety (90) days before the first extended Maturity Date (the "<u>Second Extension Date Payment</u>"). For the avoidance of doubt, the First Extension Date Payment and Second Extension Date Payment (which may be made at Borrower's sole option) shall not supersede the Borrower's obligations to make payments of interest and principal as required by Sections 2 and 3 above.

   6. <u>Events of Default</u>. Borrower will be in default of this Restructured Note if any of the following happen (a "<u>Default</u>"):

     i. Borrower fails to make any payment when due under the Restructured Note and Restructuring Agreement; or

     ii. Borrower breaches any term of the Restructuring Agreement, the Restructured Note or any of the other Loan Documents.

   7. <u>Remedies</u>. Upon the occurrence of a Default, Lender shall provide the Borrower with written notice of the Default and the Borrower shall have thirty (30) days to cure such Default. If the Borrower fails to timely cure the Default, the Default shall become an Event of Default and Lender may exercise any and all of its legal and equitable rights and remedies set forth in the Loan Documents including, but not limited to, by written demand to Borrower, accelerate the immediate payment of the entirety of the outstanding Restructured Principal together with all interest accrued and unpaid hereon and all other sums,

---

[3] [To be dated the first business day of the calendar quarter immediately following the second (2nd) anniversary of the Effective Date of the Plan. Assuming the Effective Date of the Plan occurs prior to September 30, 2022, Principal Payments would begin on October 1, 2023.]

[4] [To be dated the sixth (6th) anniversary of the Note Effective Date.]

[5] [To be dated the seventh (7th) anniversary of the Note Effective Date.]

[6] [To be dated the eighth (8th) anniversary of the Note Effective Date.]

including late charges, and other costs relating to the loan, due to Lender under this Restructured Note, the Restructuring Agreement or any other Loan Document.

8. <u>Loan Documents</u>.  This Restructured Note is the promissory note referred to in the Restructuring Agreement.  This Restructured Note is secured by collateral described in the 4921 DOT, 5230 DOT and Security Agreement (as amended by the DOT Amendments, Security Agreement Amendment, and Restructuring Agreement) and the other Loan Documents.  All of the terms, covenants and conditions contained in the Restructuring Agreement, the 4921 DOT, 5230 DOT and Security Agreement (as amended by the DOT Amendments, Security Agreement Amendment, and Restructuring Agreement), and the other Loan Documents are hereby made a part of this Restructured Note to the same extent and with the same force as if they were fully set forth herein.  In the event of a conflict or inconsistency between the terms of this Restructured Note and the Restructuring Agreement, the terms and provisions of the Restructuring Agreement will govern.

9. <u>Attorneys' Fees and Costs</u>. If Lender or any other holder of this Restructured Note retains an attorney in connection with any Event of Default or failure to make payment at the Maturity Date or to collect, enforce or defend this Restructured Note in any lawsuit or in any probate, reorganization, bankruptcy, arbitration or other proceeding, or if Borrower sues Lender or any other holder in connection with this Restructured Note and does not prevail, then Borrower agrees to pay to Lender or such other holder, in addition to the Restructured Principal, interest and any other sums owing to Lender hereunder, all costs and expenses incurred by Lender or such other holder in trying to collect this Restructured Note or in any such suit or proceeding, including, without limitation, reasonable attorneys' fees and expenses, investigation costs and all court costs and all such amounts shall thereafter constitute other indebtedness evidenced by this Restructured Note, whether or not suit is filed hereon, whether before or after the Maturity Date, or whether in connection with bankruptcy, insolvency or appeal, or whether collection is made against Borrower. The provisions of this Section 9 shall survive any termination hereof.

10. <u>Savings Clause</u>.  In the event that the interest and/or charges in the nature of interest, if any, provided for by this Restructured Note, the Restructuring Agreement or by any other Loan Document, contravenes a legal or statutory limitation applicable to the loan, if any, Borrower will pay only such amounts as would legally be permitted; <u>provided</u>, <u>however</u>, that if the defense of usury and all similar defenses are unavailable to Borrower, Borrower will pay all amounts provided for herein, in the Restructuring Agreement and in the other Loan Documents.  If, for any reason, amounts in excess of the amounts permitted in the foregoing sentence have been paid, received, collected or applied hereunder, whether by reason of acceleration or otherwise, then, and in that event, any such excess amounts will be applied to principal, unless the Restructured Principal has been fully paid, in which event such excess amount will be refunded to Borrower.

11. <u>Waivers</u>. Except as otherwise provided in this Note, the Restructuring Agreement, and the other Loan Documents, Borrower does hereby waive presentment and demand for payment, notice of dishonor, notice of intention to accelerate, notice of acceleration, protest and notice of protest and non-payment and all other notices of any kind.  No release of any security for the obligations due hereunder or extension of time for payment of this Restructured Note or any installment hereof, and no alteration, amendment or waiver of any provision of this Restructured Note, the Restructuring Agreement or any other Loan Documents made by agreement between Lender and any other person (other than Borrower) will release, modify, amend, waive, extend, change, discharge, terminate or affect the liability of Borrower or any other person who may become liable for the payment of all or any part of the obligations under this Restructured Note, the Restructuring Agreement or the other Loan Documents. No notice to or demand on Borrower will waive any obligation of Borrower or waive any right of Lender to take further action without further notice or demand as provided for in this Restructured Note, the Restructuring Agreement or the other Loan Documents.  The agreements contained herein will

3

remain in full force and be applicable notwithstanding any changes in the officers and directors relating to, the corporation, and the term "Borrower," as used herein, will include any alternative or successor corporation, but any predecessor corporation will not be relieved of liability hereunder.

12. <u>No Oral Change</u>. This Restructured Note may not be modified, amended, waived, extended, changed, discharged or terminated orally or by any act or failure to act on the part of Borrower or Lender, but only by an agreement in writing signed by the party against whom enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought.

13. <u>Transfer of Restructured Note</u>. This Restructured Note may be assigned by Lender upon written notice to Borrower. Upon such transfer, Lender may deliver all the collateral mortgaged, granted, pledged or assigned pursuant to the Loan Documents, or any part thereof, to the transferee who will thereupon become vested with all the rights herein or under applicable law given to Lender with respect thereto, and Lender will thereafter forever be relieved and fully discharged from any liability or responsibility in the matter; but Lender will retain all rights hereby given to it with respect to any liabilities and the collateral not so transferred.

14. <u>[Reserved]</u>.

15. <u>Governing Law; Waiver of Jury Trial; Jurisdiction</u>. IN ALL RESPECTS, INCLUDING, WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, MATTERS OF CONSTRUCTION, VALIDITY AND PERFORMANCE, THIS RESTRUCTURED NOTE AND THE OBLIGATIONS ARISING HEREUNDER WILL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF COLORADO APPLICABLE TO CONTRACTS MADE AND PERFORMED IN SUCH STATE (WITHOUT REGARD TO PRINCIPLES OF CONFLICT OF LAWS) AND ANY APPLICABLE LAW OF THE UNITED STATES OF AMERICA.

TO THE FULLEST EXTENT PERMITTED BY LAW, BORROWER HEREBY WAIVES ANY RIGHT TO A TRIAL BY JURY IN ANY ACTION RELATING TO THIS NOTE AND/OR THE LOAN DOCUMENTS. BORROWER, TO THE FULLEST EXTENT PERMITTED BY LAW, HEREBY KNOWINGLY, INTENTIONALLY AND VOLUNTARILY, WITH AND UPON THE ADVICE OF COMPETENT COUNSEL, (A) SUBMITS TO PERSONAL JURISDICTION IN THE STATE OF COLORADO OVER ANY SUIT, ACTION OR PROCEEDING BY ANY PERSON ARISING FROM OR RELATING TO THIS RESTRUCTURED NOTE, (B) AGREES THAT ANY SUCH ACTION, SUIT OR PROCEEDING MAY BE BROUGHT IN ANY STATE OR FEDERAL COURT OF COMPETENT JURISDICTION IN THE STATE OF COLORADO, AND (C) AGREES THAT IT WILL NOT BRING ANY ACTION, SUIT OR PROCEEDING IN ANY OTHER FORUM (BUT NOTHING HEREIN WILL AFFECT THE RIGHT OF LENDER TO BRING ANY ACTION, SUIT OR PROCEEDING IN ANY OTHER FORUM). BORROWER FURTHER CONSENTS AND AGREES TO SERVICE OF ANY SUMMONS, COMPLAINT OR OTHER LEGAL PROCESS IN ANY SUCH SUIT, ACTION OR PROCEEDING BY REGISTERED OR CERTIFIED U.S. MAIL, POSTAGE PREPAID, TO BORROWER AT THE ADDRESSES FOR NOTICES DESCRIBED IN THE RESTRUCTURING AGREEMENT, AND CONSENTS AND AGREES THAT SUCH SERVICE WILL CONSTITUTE IN EVERY RESPECT VALID AND EFFECTIVE SERVICE (BUT NOTHING HEREIN WILL AFFECT THE VALIDITY OR EFFECTIVENESS OF PROCESS SERVED IN ANY OTHER MANNER PERMITTED BY LAW).

LENDER AND BORROWER, TO THE FULLEST EXTENT NOW OR HEREAFTER PERMITTED BY LAW, HEREBY KNOWINGLY, INTENTIONALLY AND VOLUNTARILY, WITH AND UPON THE ADVICE OF COMPETENT COUNSEL, WAIVE, RELINQUISH AND FOREVER FORGO THE RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING BASED UPON,

ARISING OUT OF, OR IN ANY WAY RELATING TO THIS RESTRUCTURED NOTE OR ANY CONDUCT, ACT OR OMISSION OF LENDER OR BORROWER, OR ANY OF THEIR DIRECTORS, OFFICERS, PARTNERS, MEMBERS, EMPLOYEES, AGENTS OR ATTORNEYS, OR ANY OTHER PERSONS AFFILIATED WITH LENDER OR BORROWER, IN EACH OF THE FOREGOING CASES, WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE.

16. <u>Severability</u>.  Wherever possible, each provision of this Restructured Note must be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Restructured Note is prohibited by or invalid under applicable law, such provision will be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Restructured Note.

17. <u>Time of the Essence</u>.  Time is of the essence hereof with respect to the dates, terms and conditions of this Restructured Note and the Restructuring Agreement.

18. <u>Notices</u>.  All notices, statements, requests, demands and other communications made pursuant to or under this Restructured Note must be made in the manner set forth in the Restructuring Agreement.

[NO FURTHER TEXT ON THIS PAGE]

IN WITNESS WHEREOF, Borrower has caused this Promissory Note to be duly executed and delivered under seal as of the day and year first above set forth.

                                    DRALA MOUNTAIN CENTER f/k/a SHAMBHALA MOUNTAIN CENTER, a Colorado nonprofit corporation

                                    By:_____
                                    Name:
                                    Title: