UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| In re:<br><br>DRALA MOUNTAIN CENTER (f.k.a. SHAMBHALA MOUNTAIN CENTER), a Colorado non-profit corporation,<br><br>EIN: 84-1535130<br><br>Debtor. | Chapter 11, Subchapter V<br><br>Case No. 22-10656 (JGR) |

**DECLARATION OF MICHAEL GAYNER IN SUPPORT OF
CONFIRMATION OF DEBTOR'S PLAN OF REORGANIZATION**

I, Michael Gayner, hereby declare under penalty of perjury:

1. I am the Executive Director of Drala Mountain Center (f/k/a Shambhala Mountain Center), a Colorado non-profit corporation and the debtor and debtor in possession ("DMC" or the "Debtor") in the above-captioned Subchapter V case. As Executive Director, I am responsible for the overall management of DMC, including its strategic planning, operations, and finances.

2. Factual background regarding DMC, including its operations, corporate and capital structures, and the events leading to the filing of this Subchapter V case, is set forth in detail in the *Declaration of Michael Gayner, Executive Director of the Debtor, in Support of Subchapter V Petition and First Day Motions* [Docket No. 2] (the "First Day Declaration"). As described in the First Day Declaration, the catastrophic impact of the COVID-19 pandemic, the recent Cameron Peak wildfire, and the negative impact of past sexual misconduct by Shambhala's former spiritual leader, together with the expiration of the forbearance of the secured loan (the "Red Hills Loan") held by Red Hills, created operational and financial difficulties that resulted in the filing of this Subchapter V case.

3. I am familiar with the *Debtor's Plan of Reorganization*, filed on July 28, 2022 [Docket No. 225] (the "Plan").[1] I submit this declaration (this "Declaration") in support of the Plan. Except as otherwise indicated herein, all facts set forth in this Declaration are based upon my personal knowledge of DMC's operations and finances, information learned from my review of relevant documents or supplied to me by other members of DMC's management team and professional advisors, and my opinions based on my personal experience and knowledge. I am authorized to submit this Declaration on behalf of DMC. If called upon as a witness, I could and would testify competently to the statements set forth in this Declaration, as the information in this Declaration is accurate to the best of my knowledge.

## THE PLAN

4. To the best of my knowledge, the statements contained in the Plan regarding DMC's background, assets, and liabilities remain true and correct as of the date of this Declaration (except where such statements were made as of a specific date, in which case such statements were true and correct as of such date), and the Plan complies with the requirements for confirmation of the Plan under Subchapter V of the Bankruptcy Code.

5. The Debtor has filed its voluntary petition to commence this Subchapter V case [Docket No. 1], its statements of financial affairs and schedules of assets and liabilities [Docket Nos. 93, 162, 174], and its monthly operating reports [Docket Nos. 170, 202, 213, 214, 221, 230] and has complied with all orders issued by this Bankruptcy Court.

6. As evidenced by the *Affidavit of Service* [Docket No. 228], the Debtor prepared, filed, and served the Plan on all creditors and parties in interest, and prepared and served ballots on all creditors entitled to vote on the Plan.

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

7. The Plan has been proposed in good faith by the Debtor in order to rehabilitate the Debtor so that the Debtor may continue to operate as a viable nonprofit. The Plan was negotiated in good faith and at arms-length among the Debtor, Red Hills, and Shambhala USA. As evidenced by the *Debtor's Summary Report on Ballots and Plan Objections,* filed contemporaneously herewith, Red Hills and Shambhala USA have voted in favor of the Plan and support the confirmation of the Plan.

8. As of the date of the filing of this Declaration, the Debtor has received $994,000 in donations in escrow, consising of the pledge of $500,000 from the Pema Chödrön Foundation and matching donations of $494,000, *plus* commitments for an additional $25,000 in matching donations. In addition, contemporaneously with or shortly following the confirmation of the Plan, the Debtor has committed to launch a fundraising campaign for an additional $500,000, the proceeds of which will be used for operations and distributions under this Plan. Accordingly, I believe that the conditions for release of the donations from escrow will be satisfied on the Effective Date and that the Debtor will be able to make the distributions necessary to make the Effective Date Payment to Red Hills and to substantially consummate this Plan on the Effective Date.

9. Any payment made or to be made by the Debtor, for services or for costs and expenses in or in connection with this Subchapter V case, or in connection with the Plan and incident to this Subchapter V case, has been approved by, or is subject to the approval of, this Court as reasonable.

10. As set forth in Paragraph I of the Plan, the Debtor has disclosed (i) my identity as Executive Director and Kevin Suh, as Chief Financial Officer, and the nature of my and his compensation, and (ii) its post-confirmation directors, who are Michael Gayner, Connie Rogers,

3

Amelia Bracher, Karen Wildling, Ming-Lien Linsely, and Cliff Neuman. None of the Debtor's post-confirmation directors receive any compensation in their service as directors.

11. Creditors in Classes 2, 5 and 6 were entitled to vote on the Plan. As evidenced by the *Debtor's Summary Report on Ballots and Plan Objections* [Docket No. 239], (i) each creditor in Classes 2, 5 and 6 has accepted the Plan and (ii) no objections to confirmation of the Plan were filed by the deadline established by the *Order Setting Hearing on Confirmation of Drala Mountain Center's Subchapter V Plan and Notice of Deadlines* [Docket No. 226].[2]

12. The Plan provides that the Priority Tax Claim will be paid on or as soon as reasonably practicable after the Effective Date and allowed administrative expense claims (other than professional fee claims subject to the approval of this Bankruptcy Court) will be paid in the ordinary course of business when due.

13. I believe it is unlikely that confirmation of the Plan will be followed by liquidation or the need for further financial reorganization, and that the Debtor will have sufficient funding from its ongoing operations and donations to fund its payments under the Plan. The projections attached to the Plan are a good faith estimate of the Debtor's anticipated revenue and expenses.

14. Any fees required to be paid under 28 U.S.C. § 1930 that are owed on or before the Effective Date have been or will be paid on the Effective Date.[3]

15. The Debtor's nonprofit mission does not involve the establishment of rates over which any regulatory commission has jurisdiction or will have jurisdiction after confirmation of

---

[2] On August 24, 2022, Philip Bralich filed a *Motion in Opposition to Debtor in Possession for Cause* [Docket No. 231] (the "Bralich Motion"). Subsequently on August 28, September 8, and September 9, 2022, Bralich filed additional letters [Docket Nos. 236, 237, 239] (the "Bralich Letters"). On September 9, 2022, the Debtor filed an objection to the Bralich Motion. Neither the Bralich Motion nor the Bralich Letters were designated as objections to the Plan. On September 13, 2022, this Bankruptcy Court entered an order and a judgment [Docket Nos. 244, 245], striking the Bralich Motion and the Bralich Letters.

[3] Because the Debtor's case is a Subchapter V case, no quarterly fees are due pursuant to 28 U.S.C. § 1930(a)(6).

4

the Plan. The Debtor (i) is not obligated to provide any retiree benefits (as defined in section 1114 of the Bankruptcy Code) under any plan, fund, or program maintained prior to the Petition Date, and (ii) is not required to pay any domestic support obligations pursuant to either order or statute.

16. All transfers of property under the Plan shall be made in accordance with any applicable provisions of nonbankruptcy law that govern the transfer of property by a Colorado nonprofit corporation.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information, and belief.

Dated: September 14, 2022  /s/ *Michael Gayner*
Denver, Colorado  Name: Michael Gayner
  Title: Executive Director